UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06 CR 299 ERW |
| ) | DDN |
| RONALD THOMAS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on August 15, 2006. The parties were given until August 21, 2006, to file post-hearing memoranda.

Defendant Ronald Thomas has moved to suppress evidence and statements (Doc. 19). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On March 7, 2006, St. Louis Metropolitan Police Officer Steven Schwerb, a member of the violent offenders task force, a sub-unit of the narcotics division, applied for a search warrant from the Circuit Court of the City of St. Louis for the residence at 4554 Davison in St. Louis, Missouri. In support of the application, Officer Schwerb submitted his written, sworn affidavit. Gov. Ex. 1.

2. In his affidavit Officer Schwerb recounted the investigation of the residence and provided the following information. On February 27, 2006, he was contacted by a confidential informant (CI) who had proven reliable in the two and a half years the officer had known and worked with him or her. In their conversation on February 27, the CI stated, and described in detail, how Ronald Thomas was keeping large amounts of heroin and marijuana at the residence at 4554 Davison. The CI stated that Thomas packaged the drugs for distribution. The CI said

that people knocked on the residence door, purchased narcotics, then left. Thomas kept two handguns, which the CI described, at the residence, and Thomas said he would use them if necessary to prevent being sent back to prison. The CI told the officer that he saw Thomas hide heroin and marijuana inside the residence. Officer Schwerb did a computer check of the subject. The CI identified a photograph, shown by Officer Schwerb, as being Ronald Thomas. The CI described Thomas by his race (black) and approximate age (early 30's), height (5 feet 11 inches), and weight (160 pounds). Officer Schwerb investigated Thomas and learned that he had a violent criminal record. The affidavit also stated that the officer conducted four-45 minute surveillances of 4554 Davison and saw heavy pedestrian and vehicular traffic going to and from 4554 Davison. Thomas invited the visitors inside the residence, they stayed a short time, and then they left. On March 7, 2006, at approximately 10:10 a.m., the CI told Officer Schwerb that within the last ten hours the CI saw Thomas hide heroin and marijuana inside 4554 Davison and also saw Thomas sell heroin and marijuana to people who came to the residence. Gov. Ex. 1.

3. Upon this affidavit, at 1:00 p.m. on March 7, 2006, Circuit Judge Edward Sweeney issued a search warrant for 4554 Davison. The warrant authorized a search for heroin, marijuana, or any other illegal narcotics, U.S. currency, weapons, drug transaction records, and any other instruments of a crime. Gov. Ex. 1.

4. On March 9, 2006, the police prepared to execute the warrant. Officers Schwerb and Tom Sawyer went to 4554 Davison and watched for Ronald Thomas. The officers were in a marked police car when they saw a man they recognized as Thomas leave the residence and walk down the street. After he had walked a few houses away, the officers approached and stopped him.[1] Officer Schwerb showed Thomas the search warrant and told him it was a search warrant for 4554 Davison. The officer then asked Thomas whether he would return there with them. Thomas then asked, "What's this about?" The officer told Thomas that the police had information that there were narcotics in the house.

---

[1]From the time they watched Thomas walk from the residence until the time they stopped him, the officers did not see Thomas commit any crime.

5.  Knowing that Thomas had a violent criminal history and knowing that narcotics-related crimes often involved the possession of firearms, Officer Schwerb patted Thomas down for safety purposes. When he did so, he found a .38 revolver in Thomas's right coat pocket. Officer Sawyer then handcuffed Thomas and placed him under arrest.

6.  While Officer Sawyer was handcuffing defendant, Officer Schwerb read Thomas his constitutional rights to remain silent and to counsel from a card. When asked whether he understood these rights, Thomas said he understood them. Then, without being asked a question, Thomas said that he had found the gun in his girlfriend's backyard and was getting rid of it.

7.  The officers then placed Thomas in the backseat of the police car and they drove to a school parking lot about a half mile away from 4554 Davison, where the tactical team was preparing to execute the search warrant. Thereafter, all the officers and Thomas went to 4554 Davison. Thomas remained in the car during this entire time, including during the execution of the search warrant.

8.  Inside the residence, the officers seized mail addressed to Thomas at 4554 Davison, and what they thought was a controlled substance.[2]

9.  Next, the police took Thomas to the police station. Without being asked any questions, during the booking process, Thomas stated, "You know how many people go in and out of that crib?", that he was tired of dealing with the police, and that he wanted to talk to a lawyer. He also told the police not to take anything from the residence because he did not live there.

---

[2]Later in the investigation the police learned the substance was a cutting agent used to prepare heroin for sale.

**DISCUSSION**

**A. Search of Defendant**

Defendant Thomas seeks the suppression of the pistol seized from his pocket and all the statements he made on March 9. He argues that there was no probable cause to arrest him as he walked away from the house.

Initially, defendant argues that the government may not use the rule of Michigan v. Summers, 452 U.S. 692 (1981), to justify the initial stop and his detention as he walked away from 4554 Davison. In Michigan v. Summers, the Supreme Court determined that police may detain a resident of a house about to be searched pursuant to a warrant, where the individual was walking down the front steps of the house. The justifying purposes of the stop were to prevent the individual's flight if evidence of crime was found, to lessen the risk of harm to the officers from violent residents, and to facilitate an orderly search. 452 U.S. at 701-03. The Eighth Circuit has determined that where these reasons for the detention are not present, the government may not, without more, detain a resident who has left the premises to be searched. United States v. Sherrill, 27 F.3d 344, 346 (8th Cir. 1994); United States v. Hogan, 25 F.3d 690, 693 (8th Cir. 1994); United States v. Boyd, 696 F.2d 63, 65 (8th Cir. 1982), cert. denied, 460 U.S. 1093 (1983). In the case at bar, defendant had moved a couple of houses away from 4554 Davison when he was stopped. Whether or not defendant would have fled if he had known of the search warrant being executed is perhaps open to speculation. Open to less speculation is whether or not defendant would have become violent had he known of the search, because of his known violent history. However, it is pretty clear that his presence did not facilitate the search, because he remained in the police car while it occurred.

Whether or not defendant was lawfully stopped and detained under Michigan v. Summers, he was lawfully stopped and detained before the firearm was found on his person, because the police had probable cause to arrest him without a warrant. For a warrantless arrest to be valid, it must be supported by probable cause. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "To find probable cause to make a warrantless arrest,

the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense." United States v. Roberson, 439 F.3d 934, 939 (8th Cir. 2006). The officers must look at the totality of the circumstances when making the determination whether probable cause exists. United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005).

The facts in the instant case are similar to those in United States v. Sherrill, supra. In Sherrill, the officers obtained a search warrant for a house, and saw Sherrill leave the premises shortly before they planned to execute it. The officers stopped Sherrill, and informed him that he would be detained until the search warrant was completely executed. Id. at 345-46.

The court in Sherrill found that, while the defendant could not be detained under Michigan v. Summers, the evidence seized from his person should not be suppressed because the police had probable cause to believe he had committed the crime under investigation at the time of the execution of the search warrant. Id. at 347.

Here, there was probable cause to arrest defendant, as is amply demonstrated by Officer Schwerb's written, sworn affidavit. Information contained in a search warrant affidavit can support probable cause to arrest. See United States v. Roberson, 439 F.3d 934, 940 (8th Cir. 2006) ("knowing that they had a valid warrant to search this residence based on probable cause that drug trafficking activity was being carried out," was basis for probable cause to arrest). The undersigned concludes that it established a "fair probability that contraband or evidence of a crime would be found in a particular place." Id.; United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999) (supporting affidavit must set forth sufficient facts that contraband or evidence of crime will be found). "[T]he evidence as a whole [must] provide[] a substantial basis for finding probable cause to support the issuance of the search warrant." United States v. Stevens, 439 F.3d 983, 987 (8th Cir. 2006) (quoting United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002)).

Information from a reliable confidential informant is a legally sufficient basis for finding probable cause to issue a search warrant. United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998) (informant deemed reliable when statements are corroborated). A confidential informant can be established as reliable if he has provided officers with truthful information in the past. Id.; see also United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996) (CI's track record with officers is not the only determinative factor, but instead one factor to be considered in the totality of the circumstances). Information from the CI can also be proven reliable if it is corroborated by independent evidence. Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998).

Here, the search warrant was supported by probable cause. Officer Schwerb received information from a CI that had proven reliable in the past. Officer Schwerb had known this CI for two and one half years. The CI had provided Officer Schwerb with information about narcotics and weapons on several occasions during that time. The CI told Officer Schwerb that defendant kept a large amount of heroin and marijuana at the residence at 4554 Davison. He described defendant's appearance. The CI said that defendant was packaging heroin and marijuana for distribution and that customers came to the house to buy drugs. He also told Officer Schwerb that he had seen two handguns in the residence and described them. He stated he had observed defendant hide drugs in the residence. This information was corroborated by independent investigation. The physical appearance of defendant was corroborated by a computer check of his picture. Defendant was seen at the residence. Officer surveillance showed heavy vehicle and pedestrian traffic at the residence, and visitors stayed only briefly. When only some information from the CI is corroborated, "it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable. Walden, 156 F.3d at 870 (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)). Further, the CI had proven reliable in the past. Therefore, the search warrant is supported by probable cause. The totality of the circumstances justified a reasonable belief

that a crime was or had been committed, giving the officers probable cause to arrest defendant. The arrest was valid.

Because the arrest was valid, the search of defendant's person that resulted in the seizure of the gun is also valid as a search incident to arrest. A search incident to a lawful arrest is valid, and "requires no additional justification." United States v. Robinson, 414 U.S. 218, 235 (1973); see also United States v. Lewis, 183 F.3d 791, 793-94 (8th Cir. 1999). "The search is valid whether it took place moments before or moments after the arresting officer took the suspect into actual custody or announced his intention of so doing." United States v. Skinner, 412 F.2d 98, 103 (8th Cir. 1969). Therefore, because the information in the search warrant was enough to support probable cause to arrest defendant, the search resulting in the seizure of his gun was valid as a search incident to arrest.

### B. Search of the Residence

The officers searched the residence at 4554 Davison pursuant to a valid search warrant, so the evidence found therein should not be suppressed. There is no evidence that the search warrant was not lawfully executed. The officers arrived at the home with defendant in the car. They were searching for narcotics and weapons, as well as currency and other instruments of a crime. They seized what they thought were narcotics, as well as mail that was addressed to defendant at the address 4554 Davison. The search and seizure of these items is valid and should not be suppressed.

### C. Statements

The statements made by defendant when the officers showed him the search warrant on the street should not be suppressed. When officer Schwerb approached defendant on the street and showed him the search warrant, defendant stated, "What's this about?" This statement should not be suppressed because it was not a response to the question he was asked, about whether he would return to the residence with them. Rather, it was a statement of his own, not made in response to a question. Further, the statement was voluntary. "Voluntary statements

of any kind, not made in response to police interrogation, are not barred by the Fifth Amendment and their admissibility is unaffected by <u>Miranda</u> and its progeny." <u>United States v. Wood</u>, 545 F.2d 1124, 1127 (8th Cir. 1976). There is no indication this statement is anything but a voluntary inquiry by defendant.

The government has the burden of establishing the admissibility of statements made post-arrest by a preponderance of the evidence. <u>Colorado v. Connelly</u>, 479 U.S. 157, 169-70 (1986); <u>United States v. Black Bear</u>, 878 F.2d 213, 214 (8th Cir. 1989). The admissibility of post-arrest statements of a defendant which resulted from police interrogation depends upon whether the defendant had been advised of his rights, as prescribed by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966); whether the defendant knowingly and voluntarily waived the Miranda rights, <u>North Carolina v. Butler</u>, 441 U.S. 369, 373, 375-76 (1979); and whether the statements were voluntary. Statements are constitutionally involuntary if they are the result of government overreaching, such as mental or physical coercion, deception, or intimidation. <u>Colorado v. Connelly</u>, 479 U.S. 157, 169-70 (1986); <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986); <u>United States v. Jordan</u>, 150 F.3d 895, 898 (8th Cir. 1998); <u>United States v. Goudreau</u>, 854 F.2d 1097, 1099 (8th Cir. 1988).

Defendant's statement that he had found the gun in his girlfriend's backyard and was getting rid of it should not be suppressed. This statement, although post-arrest and after he had been advised of his rights pursuant to <u>Miranda v. Arizona</u>, was also not given in response to any officer interrogation, and it was voluntary. He waived his <u>Miranda</u> rights by making the statement right after he stated he understood his rights. <u>United States v. Savatdy</u>, 452 F.3d 974, 977-78 (8th Cir. 2006), and there are no facts indicating government coercion or overreaching to suggest that his statements were not made voluntarily.

The same is true for defendant's statements at the police station during booking. Defendant had been read his <u>Miranda</u> rights and waived them by making the statements. These statements were not in response to any officer interrogation. Therefore, these statements should not be suppressed.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 19) be denied.

The parties are advised they have until September 5, 2006,[3] to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

*/s/ David D. Noce*

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 23, 2006.

---

[3] This is more than 10 calendar days from August 23, 2006. See Federal Rule of Criminal Procedure 45(a)(2).